PAUL L. REIN, Esq. (SBN 43053)
CELIA McGUINNESS, Esq. (SBN 159420)
LAW OFFICES OF PAUL L.REIN
200 Lakeside Drive Suite A
Oakland, CA 94612
Telephone: 510/832-5001
Facsimile: 510/832-4787
Attorneys for Plaintiff MICHAEL PAULICK

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL PAULICK,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>DR. LOUIS J. GEISSBERGER; JOHN GEISSBERGER; and DOES 1 to 10, inclusive,<br><br>　　　　　Defendants. | Case No.: C09 01273 JCS<br>**Civil Rights**<br><br>**CONSENT DECREE AND [PROPOSED]**<br>**ORDER AS TO INJUNCTIVE RELIEF**<br>**ONLY** |

　　　　1.　　Plaintiff MICHAEL PAULICK filed a Complaint in this action on March 24, 2009, to obtain recovery of damages for his discriminatory experiences, denial of access, and denial of his civil rights, and to enforce provisions of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. 2 §12101 et seq., and California civil rights laws against Defendants DR. LOUIS J. GEISSBERGER and JOHN GEISSBERGER, relating to the condition of their public accommodations as of May 1, 2008, and continuing. Plaintiff has alleged that Defendants violated Title III of the ADA and sections 51, 52, 54, 54.1, 54.3 and 55 of the California Civil Code, and sections 19955 et seq. of the California Health & Safety Code by failing to provide full and equal access to their facilities at 1341 South Eliseo Drive, Greenbrae, California.

2. Defendants DR. LOUIS J. GEISSBERGER and JOHN GEISSBERGER deny the allegations in the Complaint and by entering into this Consent Decree and Order do not admit liability to any of the allegations in Plaintiffs Complaint filed in this action. The parties hereby enter into this Consent Decree and Order for the purpose of resolving injunctive relief aspects of this lawsuit without the need for protracted litigation and without the admission of any liability. Issues of damages and attorney fees, costs and expenses will be the subject of further negotiations and litigation if necessary.

**JURISDICTION:**

3. The parties to this Consent Decree agree that the Court has jurisdiction of this matter pursuant to 28 U.S.C. section 1331 for alleged violations of the Americans with Disabilities Act of 1990, 42 U.S.C. sections 12101 *et seq.* and pursuant to supplemental jurisdiction for alleged violations of California Health & Safety Code sections 19955 *et seq.;* Title 24, California Code of Regulations; and California Civil Code sections 51, 52, 54, 54.1, 54.3, and 55.

4. In order to avoid the costs, expense, and uncertainty of protracted litigation, the parties to this Consent Decree agree to entry of this Order to resolve all claims regarding injunctive relief raised in the Complaint filed with this Court. Accordingly, they agree to the entry of this Order without trial or further adjudication of any issues of fact or law concerning Plaintiffs claims for

injunctive relief.

WHEREFORE, the parties to this Consent Decree hereby agree and stipulate to the Court's entry of this Consent Decree and Order, which provides as follows:

**SETTLEMENT OF INJUNCTIVE RELIEF:**

5. This Order shall be a full, complete, and final disposition and settlement of Plaintiff's claims against Defendants for injunctive relief that have arisen out of the subject Complaint. The parties agree that there has been no admission or finding of liability or violation of the ADA and/or California civil rights laws, and this Consent Decree and Order should not be construed as such.

6. The parties agree and stipulate that the corrective work will be performed in

compliance with the standards and specifications for disabled access as set forth in the California Code of Regulations, Title 24-2, and Americans with Disabilities Act Accessibility Guidelines, unless other standards are specifically agreed to in this Consent Decree and Order.

  a) **Remedial Measures**: Defendants agree to perform corrective work at 1341 South Eliseo Drive, Greenbrae, California. The scope of the corrective work agreed upon by the parties is:

> i. Path of travel from the public right of way: Create a 4' wide path of travel from the boundary of the site to the main entrance of the building ~~(as shown in Attachment A)~~ which is separated from the vehicular way, does not go behind parked cars, does not exceed 5% slope or 2% cross-slope, does not have any vertical change in elevation greater than ½" and is no narrower than 36" at a point.
>
> ii. <u>Parking and Path of Travel from Parking:</u> Create accessible parking and path of travel to the main entrance of the building as shown by the drawing attached as Attachment "A".
>
> ii. <u>Between 1341 and accessible parking spaces</u>: Reconfigure the path of travel between each accessible parking space and the entrance to the building adjacent to it so a disabled individual is not compelled to travel behind any parked car other than his/her own.
>
> iii. <u>Primary entry door</u>: Adjust or replace the door closer so the maximum force required to open the door is 5 lbs of push pressure; adopt a written policy to regularly maintain the door push pressure at 5 lbs.
>
> iv. <u>Parking Signage:</u> Provide a sign at each entrance to the parking lot, <u>or</u> at the end of each designated accessible parking space, which states that cars parked illegally in a designated accessible space will be towed. The sign must provide the location and phone number where towed vehicles may be retrieved.
>
> v. <u>Accessible Parking Spaces</u>: Provide five total accessible parking spaces, one of which is under the overhang at the main entrance to the 1341 building as depicted in Attachment "A", and at least one of which is sized and arranged as van accessible, with the following attributes:
>
>> 1) They are located closest to entry doors for each building except as depicted in Attachment A and B;

2) Each of the parking spaces meets code requirements for space length, width, adjacent loading zone length and width, slope and cross-slope, and signage.

3) Each curb ramp associated with each accessible parking spot may not encroach into the parking space and/or adjacent loading zone for the space; must have a maximum slope of 8/33% and a maximum cross slope of 2%, a clear width of 48", a 48" level landing at the top and bottom, and flared sides with a maximum slope of 10%; and be covered by tactile domes in accordance with the ADA and the CBC.

vi. <u>Medical Office Suite Primary Entry Door</u>:

(1) Adjust or replace the door closer so the maximum force required to open the door is 5 lbs of push pressure; adopt a written policy to regularly maintain the door push pressure at 5 lbs.

(2) Remove the kick down hold-open device mounted to the bottom of the door and provide a push plate which is a smooth uninterrupted surface on the bottom 10" of the door.

vii. <u>Medical Office Suite Primary Entry Door landing:</u> Remove the chairs placed in the entry and institute a written policy to keep the floor clear so there is a minimum of 60" measured perpendicular to the face to the closed door and extends beyond the strike edge of the door a minimum of 18".

viii. <u>Medical Office Suite Service Counter:</u>  Provide a lowered counter at least 36" long which is a maximum 34" high.

ix. <u>Unisex Restroom within Medical Office Suite</u>:

(1) Provide signage required by both ADAAG and Title 24.

2) <u>Turn-around space:</u> Remove any objects which interfere with the turn-around space, and institute a written policy which requires that the area be kept clear.

3) <u>Hot water feed:</u> Fully wrap it to insulate people from burns.

4) <u>Towel dispenser:</u> Lower it to no higher than 40" on center to the highest operable mechanism.

5) <u>Toilet Location:</u> Install an offset flange to move the 1 toilet as far from the existing wall as possible but in no case less than 17" on center.

6) <u>Clear floor space beside fixture:</u> Reconfigure the bathroom so the minimum distance between the side of the toilet and the face of the sanitary napkin disposal box, sink, or any other obstruction is 28".

7) <u>Grab bars:</u> Provide a grab bar which is a minimum 42" long, located 33" above the finished floor, projecting 24" in front of the face of the toilet, providing 1 ½" of knuckle space, and unobstructed by objects.

8) <u>Sanitary seat cover dispenser:</u>

(a) Relocate it to a place adjacent to a 30-inch by 48-inch clear floor ground space and mount it no higher than 40" on center to the highest operable mechanism.

(b) Timing of Injunctive Relief: Defendants will submit plans for all corrective work to the appropriate governmental agencies within 45 days of the entry of this consent decree by the Court. Defendants will commence work within 30 days of receiving approval from the appropriate agencies. Defendants will complete all work within 30 days of commencement. In the event that unforeseen difficulties prevent Defendants from completing any of the agreed-upon injunctive relief Defendants or their counsel will notify Plaintiffs counsel in writing within 15 days of discovering the delay. Defendants or their counsel will notify Plaintiffs counsel when the corrective work is completed, and in any case will provide a status report no later than 120 days from the entry of this Consent Decree.

(c) Defendants will notify plaintiff in writing at the end of 120 days as to the current status of agreed to injunctive relief and every

90 days thereafter until all access is provided. If defendants fail to provide injunctive relief on the agreed to timetable and/or fail to provide timely written status notification, and plaintiff files a motion with the court to obtain compliance with these terms, plaintiff reserves the right to seek additional attorney fees for all compliance work necessitated by defendants' failure to keep their agreement.

**DAMAGES, ATTORNEY FEES, LITIGATION EXPENSES AND COSTS:**

7. The parties have not reached any agreement regarding Plaintiffs claims for damages, attorneys fees, litigation expenses and costs. These matters will be the subject of future negotiation or litigation as necessary.

**ENTIRE CONSENT DECREE AND ORDER:**

8. This Consent Decree and Order and Attachment A to this Consent Decree, which is incorporated herein by reference as if fully set forth in this document, constitute the entire agreement between the signing parties on the matters of injunctive relief and no other statement, promise or agreement, either written or oral, made by any of the parties or agents of any of the parties that is not contained in this written Consent Decree and Order shall be enforceable regarding the matters of injunctive relief described herein. This Consent Decree and Order applies to Plaintiffs claims for injunctive relief only and does not resolve Plaintiffs claims for damages, attorney fees, litigation expenses and costs, which shall be the subject of further negotiation and/or litigation. The parties stipulate that both parties request the Court not dismiss the case, as issues of damages and attorney fees are still before the Court.

**CONSENT DECREE AND ORDER BINDING ON PARTIES AND SUCCESSORS IN INTEREST:**

9. This Consent Decree and Order shall be binding on Plaintiff MICHAEL PAULICK; defendants DR. LOUIS J. GEISSBERGER; JOHN GEISSBERGER and any successors in interest. The parties have a duty to so notify all such successors in interest of the existence and terms of this

Consent Decree and Order during the period of the Court's jurisdiction of this Consent Decree and Order.

**MUTUAL RELEASE AND WAIVER OF CIVIL CODE SECTION 1542 AS TO INJUNCTIVE RELIEF ONLY:**

10. Each of the parties to this Consent Decree understands and agrees that there is a risk and possibility that, subsequent to the execution of this Consent Decree, any or all of them will incur, suffer or experience some further loss or damage with respect to the lawsuit which are unknown or unanticipated at the time this Consent Decree is signed. Except for all obligations required in this Consent Decree, the parties intend that this Consent Decree apply to all such further loss with respect to the lawsuit, except those caused by the parties subsequent to the execution of this Consent Decree. Therefore, except for all obligations required in this Consent Decree, this Consent Decree shall apply to and cover any and all claims, demands, actions and causes of action by the parties to this Consent Decree with respect to the lawsuit, whether the same are known, unknown or hereafter discovered or ascertained, and the provisions of Section 1542 of the California Civil Code are hereby expressly waived. Section 1542 provides as follows:

**GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.**

This waiver applies to the injunctive relief aspects of this action only and does not include resolution of Plaintiffs claims for damages, attorney fees, litigation expenses and costs.

11. Except for all obligations required in this Consent Decree, and exclusive of the referenced continuing claims for damages, statutory attorney fees, litigation expenses and costs, each of the parties to this Consent Decree, on behalf of each, their respective agents, representatives, predecessors, successors, heirs, partners and assigns, releases and forever discharges each other Party and all officers, directors, shareholders, subsidiaries, joint venturers, stockholders, partners,

parent companies, employees, agents, attorneys, insurance carriers, heirs, predecessors, and representatives of each other Party, from all claims, demands, actions, and causes of action of whatever kind or nature, presently

known or unknown, arising out of or in any way connected with the lawsuit.

**TERM OF THE CONSENT DECREE AND ORDER**:

12. This Consent Decree and Order shall be in fall force and effect for a period of twelve (12) months after the date of entry of this Consent Decree and Order, or until the injunctive relief contemplated by this Order is completed, whichever occurs later. The Court shall retain jurisdiction of this action to enforce provisions of this Order for twelve (12) months after the date of this Consent Decree, or until the injunctive relief contemplated by this Order is completed, whichever occurs later.

**SEVERABILITY:**

13. If any term of this Consent Decree and Order is determined by any court to be unenforceable, the other terms of this Consent Decree and Order shall nonetheless remain in full force and effect.

**SIGNATORIES BIND PARTIES:**

14. Signatories on the behalf of the parties represent that they are authorized to bind the parties to this Consent Decree and Order. This Consent Decree and Order may be signed in counterparts and a facsimile signature shall have the same force and effect as an original signature.

PLAINTIFF

Dated: 1-21-10          _____
                         MICHAEL PAULICK

DEFENDANTS

Dated: 1/21/10          _____
                         DR. LOUIS GEISSBERGER

Consent decree clean copy.docm          8

**CONSENT DECREE AND ~~PROPOSED~~ ORDER**
Case No.: C09 01273 JCS

Dated: 1/21/10

*[signature: John Geissberger]*

JOHN GEISSBERGER

APPROVED AS TO FORM:

LAW OFFICES OF PAUL L. REIN

Dated: 1-21-10

By: *[signature]*

PAUL L. REIN, Attorneys for Plaintiff MICHAEL PAULICK

FREITAS McCARTHY MacMAHON & KEATING

Dated: 1/21/10

By: *[signature]*

THOMAS F. KEATING, JR. Attorneys for Defendants DR. LOUIS GEISSBERGER and JOHN GEISSBERGER

## ORDER

Pursuant to stipulation, and for good cause shown, IT IS SO ORDERED.

Dated: January 26, 2010

*[signature: Judge Joseph C. Spero / seal: United States District Court, Northern District of California]*

Honorable
United States